## L'Union Musicale

### *vs.*

## Ovide Chevalier and Fidelity & Deposit Company of Maryland.

### Androscoggin.   Opinion December 5, 1912.

*Alterations.   Architect.   Bond.   Contract.   Contractor.   Damages.*
*Foundation.   Negligence.   Notice.   Plan.   Specifications.*
*Supervision.   Surrender of Contract.   Waiver.*

This is an action to recover damages for the alleged breach of a bond given by the defendant, Chevalier, as principal, and the Fidelity & Deposit Company of Maryland as surety, to secure the faithful performance of a contract with the plaintiff for the erection of a brick building at the corner of Cook and Second Streets in Auburn to be used as a club house. The contractor was to provide all the materials and perform all the labor required to construct the building according to the terms of the contract and all of the drawings, specifications and stipulations which were made a part of the contract, for the agreed price of $29,500. This contract bears date May 23, 1910, and the bond in suit, signed by the contractor, Chevalier, and the surety company is dated July 5, 1910. Work on the building was begun two or three weeks after the date of the contract and was continued under the supervision of architect Desjardines until August 15th, when as the defendant claim, a heavy fall of rain undermined the stone foundation at one corner of the building and caused two of the partially constructed walls near that corner to settle and crack. The plaintiff contends that the settling and cracking of the walls was due to the failure of the contractor to lay the foundation and protect the work, according to the plans and specifications, and that it was known to the contractor that the foundation at that point was settling before the rainfall. On the 23rd day of August, the architect notified the contractor to tear down these "brick walls and stone foundations and rebuild them according to contract and specifications."

And on the 27th day of the same month, the plaintiff caused due notice to be given to the Surety Company of the contractor's failure to perform his contract.

After the contractor had received from the architect the notification of August 23rd, and this had been reinforced by a like notice from the plaintiff demanding that he tear down the brick walls and stone foundations in question and rebuild them according to the contract he accepted the inevitable result and surrendered the contract. He had manifestly become convinced prior to August 15th that the building could not be erected in a workmanlike manner, according to the plans and specifications, for the contract price of $29,500; but after the discovery of the defective foundations and the demand by the owner for a rebuilding of the walls, he realized that compliance with this demand and a full performance of his contract would involve a heavy loss to him.

The surety company thereupon formally waived the privilege to assume the contract.

The situation which then confronted the plaintiff was not free from practical difficulty. It had paid the contractor $6,000 and become liable to pay valid lien claims for $1,286 more. As a result of the contractor's failure to perform his work according to the contract, the foundations were not sufficiently substantial and secure to sustain a building of the height called for by the original plan. After expending all of its cash on hand upon Chevalier's rejected work, it was not practicable to raise sufficient funds to tear down his work, and, commencing anew, construct the building according to the original plan. The society, therefore, adopted the only course remaining. It procured the services of another architect, redrafted and altered the plans and proceeded to erect a building one story lower and otherwise materially different from that originally planned. Chevalier's foundation and walls as strengthened and repaired, were deemed sufficient to support a building erected according to the modified plan, and they were accordingly allowed to stand and were utilized in the building finally erected. Thus the amount of the damage caused by the contractor's failure to perform his contract according to the specifications, for which the defendant would be legally responsible, was reduced to the lowest practicable figure.

The plaintiff claims to recover only the damage resulting from the contractor's breach of the contract before it was surrendered. It had paid him for the labor and materials furnished according to the certificate of the architect, but subsequently discovered outstanding lien claims on the property to the amount of $1,286.17 which it was compelled to pay. The plaintiff was damaged to that extent by reason of Chevalier's failure to furnish the labor and materials according to the contract.

The amount actually expended by the plaintiff in repairing and strengthening the foundation and walls, is also a legitimate element of damage. The items of labor for these repairs are not definitely separated by the testimony from the other work on the building; but upon the estimates made by the contractor himself and other witnesses, it is considered by the Court that the sum of $300 would be a reasonable allowance for this item.

On report. Judgment for the plaintiff for '$1,586.17, with interest from the date of the writ.

This is an action to recover damages for the alleged breach of a bond given by the defendant, Chevalier, as principal, and the Fidelity and Deposit Company of Maryland, as Surety, to secure the faithful performance of a contract with the plaintiff, for the erection of a brick building at the corner of Cook and Second Streets in Auburn, Maine, to be used as a club house. Plea, the general issue with brief statement as follows: And for brief statement of special matter of defense to be used under the general issue above pleaded that it claims oyer of that certain writ obligatory mentioned in plaintiff's declaration. Upon the conclusion of the evidence, the case was reported to the Law Court upon so much of the evidence as is legally admissible, the Law Court to render such final judgment therein as the law and the admissible evidence require. It is agreed by the parties that in case the Law Court finds there is any breach of defendants' bond, the Law Court should assess the damages.

The case is stated in the opinion.

*McGillicuddy & Morey,* for plaintiff.

*J. G. Chabot, and George C. Wing,* for defendants.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

WHITEHOUSE, C. J. This is an action to recover damages for the alleged breach of a bond given by the defendant, Chevalier, as principal, and the Fidelity & Deposit Company of Maryland as surety, to secure the faithful performance of a contract with the plaintiff for the erection of a brick building at the corner of Cook and Second Streets in Auburn to be used as a club house. The contractor was to provide all the materials and perform all the labor required to construct the building according to the terms of the contract and of all the drawings, specifications and stipulations which were made a part of the contract, for the agreed price of $29,500. This contract bears date May 23, 1910, and the bond in suit, signed by the contractor, Chevalier, and the surety company

is dated July 5, 1910. Work on the building was begun two or three weeks after the date of the contract and was continued under the supervision of architect Desjardines until August 15th, when as the defendants claim a heavy fall of rain undermined the stone foundation at one corner of the building and caused two of the partially constructed walls near that corner to settle and crack. The plaintiff contends that the settling and cracking of the walls were due to the failure of the contractor to lay the foundation and protect the work, according to the plans and specifications, and that it was known to the contractor that the foundation at that point was settling before the rainfall. On the 23rd day of August the architect notified the contractor to tear down these "brick walls and stone foundations and rebuild them according to contract and specifications." On the same day, the plaintiff by its attorneys caused the following notice to be delivered to the Surety Company:

"In accordance with the terms of the bond furnished to the L'Union Musicale of Auburn, Me. (a corporation), for the faithful performance of the contract for their building by the contractor, Ovide Chevalier, we hereby notify you that, through the neglect of the said Ovide Chevalier to properly protect his work, rain caused a damage (Monday the 15th) of Twelve to Fifteen Hundred Dollars."

And on the 27th day of the same month, the plaintiff caused a second notice to be given to the Surety Company, as follows:

"You are hereby notified that the L'Union Musicale to whom Ovide Chevalier gave a bond as principal and yourself as surety hereby notify you of the following defects and failure to perform the contract on the part of Chevalier that has come to their notice, to wit:

"The depth of their block at the corner of Cook and Second Streets in Auburn at a point six feet West from the Northeast corner of the wall, that the depth is three feet and two inches and also at a point twenty-five feet from the same corner the depth is three feet and three inches; at a point twenty feet East from the Northwest corner the depth is four feet and six inches and ten feet South of the Northeast corner the depth is three feet and four inches and at the Southeast corner the depth is four feet.

"You are hereby notified to at once cause said foundations to be put in according to the contract and pay the damages occasioned by the defective work."

It is not in controversy that according to the specifications in the contract relating to the "height of stone work" the foundations in the sections comprising the corner where the walls settled and cracked were to be six feet in height, "the top of the wall being figured one foot from present grade." The third paragraph of the contract provides that "no alterations shall be made in the work except upon written order of the architect." In the stipulations in regard to "general conditions" is the following provision:

"And the contractor is to amend and make good at his own cost any defects, injuries, shrinkage, settlements or other faults in his work arising from defective or improper materials and workmanship which may appear within one year after the completion of the building, is to clear away from time to time the dirt and rubbish resulting from his operations and cover and protect his work and materials from all damage during the progress of the building, and deliver the whole in a clean and perfect condition."

It appears from the evidence that the statements made by the plaintiff in the notification to the Surety Company of August 27th, respecting the depth of the stone foundations were entirely correct and that instead of being six feet in depth as required by the specifications, the foundation actually laid by the contractor varied from three feet two inches to four feet six inches; and it is admitted by the contractor that no written order was ever given by the architect authorizing such a change to be made in the depth of the foundation.

It is also satisfactorily shown by the testimony that the contractor, who was required by the terms of the contract to protect his work against all damage during the building, negligently allowed the ditch which should have carried off the water, to become obstructed so that at the time of the heavy rain the water flowed into the cellar and undermined the wall which at this point was built upon the sand. It appears, however, that the foundation had setttled and the wall cracked somewhat before the rain and that the cracks had been "jointed" by the contractor; and that after the rain the foundations settled still more and the cracks in the walls were reopened.

On the 12th day of September, the architect Desjardines, in the discharge of his duty under the provisions of the contract, signed a certificate stating that the contractor, Chevalier, had "refused and neglected to supply a sufficiency of properly skilled workmen or of materials of the proper quality, and has failed to prosecute the work . . . . with diligence and has failed in the performance of the agreements contained in such contract." He further certified that such neglect, refusal and failure on the part of the contractor were sufficient cause for the plaintiff "to terminate the employment of the contractor under said contract, and is also sufficient ground for the said Union to enter upon the premises and take possession for the purpose of completing the work . . . . and to employ any other person or persons to finish the work and to provide the materials therefor."

The next day, September 13th, the plaintiff gave the contractor a written notice that this certificate had been received from the architect, and that at the expiration of three days from the service of that notice upon Chevalier, the owner would be at liberty to terminate the employment of the contractor and employ any other person or persons to finish the work, in pursuance of the provisions of the contract.

After the contractor had received from the architect the notification of August 23rd, and this had been reinforced by a like notice from the plaintiff demanding that he tear down the brick walls and stone foundations in question and rebuild them according to the contract, he accepted the inevitable result and surrendered the contract. He had manifestly become convinced prior to August 15th that the building could not be erected in a workmanlike manner, according to the plans and specifications, for the contract price of $29,500; but after the discovery of the defective foundations and the demand by the owner for a rebuilding of the walls, he realized that compliance with this demand and a full performance of the contract would involve a heavy loss to him.

The Surety Company thereupon formally waived the privilege to assume the contract.

The situation which then confronted the plaintiff was not free from practical difficulty. It had paid the contractor $6,000 and become liable to pay valid lien claims for $1,286 more. As a result

of the contractor's failure to perform his work according to the contract, the foundations were not sufficiently substantial and secure to sustain a building of the height called for by the original plan. After expending all of its cash on hand upon Chevalier's rejected work, it was not practicable to raise sufficient funds to tear down his work, and, commencing anew, construct the building according to the original plan. The society therefore adopted the only course remaining. It procured the services of another architect, redrafted and altered the plans and proceeded to erect a building one story lower and otherwise materially different from that originally planned. Chevalier's foundation and walls, as strengthened and repaired, were deemed sufficient to support a building erected according to the modified plan, and they were accordingly allowed to stand and were utilized in the building finally erected. Thus the amount of the damage caused by the contractor's failure to perform his contract according to the specifications, for which the defendants would be legally responsible, was reduced to the lowest practicable figure.

The plaintiff claims to recover only the damages resulting from the contractor's breach of the contract before it was surrendered. It had paid him for the labor and materials furnished according to the certificates of the architect, but subsequently discovered outstanding lien claims on the property to the amount of $1,286.17 which it was compelled to pay. The plaintiff was damaged to that extent by reason of Chevalier's failure to furnish the labor and materials according to the contract.

The amount actually expended by the plaintiff in repairing and strengthening the foundation and walls, is also a legitimate element of damage. The items of labor for these repairs are not definitely separated by the testimony from the other work on the building; but upon the estimates made by the contractor himself and other witnesses, it is considered by the court that the sum of $300 would be a reasonable allowance for this item. The certificate must accordingly be,

> *Judgment for the plaintiff for $1,586.17,*
> *with interest from the date of the writ.*